UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES | REPORT AND RECOMMENDATION OF SPECIAL MASTER |
| | 1:24-MC-03415-BMC-JAM |
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBER 169927 (CWI, INC). | 1:26-MC-03541-BMC-JAM |

**Parties**:

Spectrum Settlement Recovery ("Spectrum")

Driftwood IX Funding LLC ("Driftwood")

**Representatives**:

Joey Hodges, General Manager
Spectrum Settlement Recovery
P.O. Box 480
San Francisco, CA 94104
(415) 392-5900
jhodges@spectrumsettlement.com
Representative of Spectrum

Neil Desai, Managing Partner
HBP III LLC
555 Theodore Fremd Ave., Suite C-303
Rye, NY 10580
(646) 827-4575
DriftwoodPCIXClaims@haybeach.com
Representative of Driftwood

I. Background

The parties to the conflicts listed in the caption have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.)

("*MDL 1720*") arising out of the payment card transactions of CWI, Inc. ("CWI").[1] Each contends that it purchased CWI's claim – Spectrum in 2013 (through its affiliate Cascade Settlement Services, LLC ("Cascade"), on whose behalf Spectrum is acting), and Driftwood in 2022. For the reasons set forth below, I conclude that Cascade owns CWI's claim and therefore respectfully recommend that the Court direct the Class Administrator to withdraw Driftwood's registration and process Spectrum's.

On March 5, 2013, Cascade entered into an Asset Purchase and Sale Agreement ("2013 APSA") with Good Sam Enterprises, LLC ("Good Sam"); Camping World, Inc. ("Camping World"), a wholly-owned subsidiary of Good Sam; and CWI, a wholly-owned subsidiary of Camping World. *See* Letter from Spectrum to Special Master dated Aug. 27, 2025 ("Spectrum 8/27/25"); 2013 APSA (copy submitted with Spectrum 8/27/25). The agreement defined the "Asset" being sold and purchased as the collective rights of Good Sam, Camping World, and CWI to "a claim (the 'Claim') as a member of the [*MDL 1720* Class[2]] for a monetary recovery."

---

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class (the "Class"), a party must first register that merchant's Taxpayer Identification Number ("TIN") with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that merchant TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. In cases where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

[2] At the time of the 2013 APSA, the Court had preliminarily approved a settlement between the network defendants and a single class of merchants seeking both monetary and injunctive relief. *See MDL 1720*, 2012 WL 12929536 (E.D.N.Y. Nov. 27, 2012). After the Court granted final approval of that settlement, the Second Circuit reversed it. *See MDL 1720*, 986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev's and vacated*, 827 F.3d 223 (2d Cir. 2016). The Court later certified a settlement class limited to merchants seeking damages and approved the network defendants'

2013 APSA at 1 (Recital A). It further provided for Cascade to purchase "all right, title, and interest in and or associated with, or connected in any manner to, the Claim and any resulting asset that may arise from the [*MDL 1720*] litigation." *Id.* (Recital E). As part of the 2013 APSA, each of the three sellers executed a notice to the Class Administrator that it had assigned its rights to the Claim to Cascade. *See id.* at 9-11.[3]

Driftwood rests its position on a pair of transactions in 2021 and 2022. First, on December 28, 2021, LW VMC I LLC (which Driftwood refers to as "Lake Whillans") entered into a Purchase and Sale Agreement dated December 28, 2021 ("2021 PSA") with two sellers: Camping World and FreedomRoads LLC ("FR"). *See* Letter to Special Master dated Aug. 28, 2025 ("Driftwood 8/28/25") at 1 & Ex. B ("2021 PSA").[4] More precisely, the 2021 PSA defined the term "Seller" to refer collectively to "**FREEDOMROADS, LLC** and **CAMPING WORLD, INC.** on behalf of itself and its subsidiaries and/or affiliates under common ownership and control respectively[1]" with the footnote adding that "Seller includes all Merchants Associated with the Claim as defined in Section 3.5 *but does not include Good Sam Enterprises, LLC and its subsidiaries*." 2021 PSA, preamble (boldface capitalization in original, italics added).[5] The

---

settlement with that class. *See MDL 1720*, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023).

[3] In addition to a copy of the 2013 APSA, Spectrum has also submitted emails from March 2013 reflecting conveyance of an executed copy of the agreement and the payment by Cascade.

[4] Without explanation, Driftwood refers collectively to Lake Whillans' counterparties – neither of which is CWI, Inc. – as "CWI." Driftwood 8/28/25 at 1. To avoid confusion with my usage of "CWI" to refer solely to CWI, Inc., I will not use a collective term to refer to Camping World and FR.

[5] Section 3.5 of the 2021 PSA defines the term "Merchants Associated with the Claim" to mean "all merchants identified either in (i) Exhibit C.1 … (ii) Exhibit C.2 … or (iii) merchants identified by relationship name 'Affinity Group Holding, Inc' or 'FreedomRoad LLC NPCO 1.'" The redacted copy of the 2021 PSA Driftwood has supplied includes title pages for the cited exhibits but does not include any list of merchants who fall within the defined scope of "Merchants Associated with the Claim." The omission has no effect on my analysis because the

exclusion of Good Sam and its subsidiaries – which Driftwood does not acknowledge or explain – is important because, as noted above, Good Sam, its subsidiary Camping World, and Camping World's subsidiary CWI sold their *MDL 1720* claim to Cascade in 2013. *See* 2013 APSA, preamble (defining the term "Sellers"). The exclusion is also confusing in that Camping World held itself out as Good Sam's wholly owned subsidiary in 2013, *see id.*, but then held itself out as a claim seller in 2021 while at the same time defining the term "Seller" to exclude Good Sam's subsidiaries.

Driftwood points out that the 2021 PSA included as an exhibit the Affidavit of Claim Status, which Driftwood describes as having been "notarized and signed by *CWI*'s SVP, General Counsel and Corporate Secretary." Driftwood 8/28/25 at 2 & Ex C (copy of 2021 PSA Ex. D) ("Christen Aff.") (emphasis added). That description is incorrect. The affiant Driftwood mentions is Lindsey Christen ("Christen"), who did not claim to hold any position with CWI. Instead, Christen identified herself in the affidavit as "the Senior Vice President, General Counsel, and Corporate Secretary of **FREEDOMROADS, LLC and CAMPING WORLD, INC.**" Christen Aff, preamble (emphasis in original).[6] In her affidavit, Christen avers that "Seller has not previously transferred or received compensation for the Claim, in whole or in part, or any interest therein, or authorized any other party to file the Claim on its behalf and receive a fee, commission, or any similar compensation." *Id.* ¶ 4 (quoted in Driftwood 8/28/25 at 2).

text of 2021 PSA's definition of "Seller" explicitly refers to Good Sam and Camping World and unambiguously refers to Camping World's subsidiary CWI. There is thus no need to review the contents of Exhibits C.1 or C.2 to determine the status of those three entities, and the inclusion of any other merchant in the exhibits would be irrelevant to the conflict here.

[6] Driftwood does not explain why it refers to "CWI" as the affiant's employer.

The second transaction on which Driftwood relies occurred in September 2022, when Driftwood as the buyer entered into a Claim Sale Agreement with Lake Whillans as the seller. Driftwood 8/28/25 at 1 & Ex. A ("2022 CSA"). As Driftwood describes it, the latter agreement conveyed, among other things, "certain claims, demands, rights and causes of action … related to Camping World Inc. and affiliate Freedom Roads LLC … in [*MDL 1720*], including any potential settlement contemplated by" the Superseding Settlement Agreement, ECF 7257-2 ("Settlement Agreement").[7] Driftwood 8/28/25 at 1 & Ex. A.

II. Analysis

CWI and its corporate parents Camping World and Good Sam sold all of the rights they owned related to their status as class members in *MDL 1720* to Cascade in 2013 as part of the 2013 APSA. As a result, when Camping World and FR entered into the 2021 PSA with Lake Whillans, neither seller owned any of the rights at issue here. Camping World had clearly disposed of its *MDL 1720* claims in 2013.[8] As to FR, the record before me does not make clear what relation, if any, it had to CWI or Good Sam. If it had no such relationship, it cannot ever have been in a position to sell those entities' *MDL 1720* claims. Even if FR were the successor in interest to both CWI and Good Sam, however, the result would be the same: because CWI and Good Sam no longer owned any MDL 1720 claims after 2013, FR could never have come into possession of such claims and accordingly can never have sold them.

[7] Driftwood refers to the collective *MDL 1720* damages claims of Camping World and FR as the "CWI Claims". To avoid confusion with the *MDL 1720* damages claims of CWI, Inc., I will not use that term, either.

[8] Camping World's sale of its *MDL 1720* claim in the 2013 APSA moots the question of whether Camping World was included or excluded from the 2021 PSA's definition of "Seller."

Christen's affidavit does not change the analysis. Once CWI and its parent entities had sold their *MDL 1720* claims, Christen had no power to undo that sale by making a sworn statement that ignored it. A discrepancy between the facts that Christen asserted in her affidavit and the true ownership of any entity's *MDL 1720* claims might support a contract-based claim among the parties to the 2021 PSA and the 2022 CSA, but that too would not undo the sale of the claims at issue here under the 2013 APSA.[9]

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court find that Cascade owns CWI's *MDL 1720* damages claim and that it should therefore direct the Class Administrator to withdraw Driftwood's registration of CWI's TIN and process Spectrum's.

## IV. Objections

This Report and Recommendation will be served on all registrants who are parties to the instant conflict via the Court's ECF system, and the Class Administrator will also promptly provide a copy to all such registrants. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03541-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this

---

[9] Driftwood has not mentioned the possibility of any such lawsuit, and I do not address its merits here. Even if Driftwood did seek to assert rights arising under the 2022 CSA, I would recommend against adjudicating any such claim within the *MDL 1720* litigation. As this Court has already held, such ancillary claims "do not fall under this Court's retained settlement jurisdiction" but must instead be litigated "in independent lawsuits, outside of MDL 1720." *In re MDL 1720 Damages Class Settlement Disps*., 2026 WL 2389790, at *1 (E.D.N.Y. Aug. 17, 2026).

Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: September 1, 2026

*/s/ James Orenstein*
Special Master